UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEARNELL L. SCROGGINS,

       Plaintiff,                CIVIL ACTION NO. 15-cv-10366

   v.

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Pearnell L. Scroggins seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15).  Plaintiff has also filed a Response to Defendant's Motion.  (Docket no. 16.)  With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 19.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 23, 2012, and an application for supplemental security income on August 6,

2012, alleging disability beginning January 17, 2012, due to falling and hitting his head on a window sill, a stroke, paralysis of his neck and hands, damage to his fifth and sixth vertebrae and his spine, pain, memory loss, high blood pressure, and numbness and tingling. (TR 88-89, 137-45, 159.) The Social Security Administration denied Plaintiff's claims on September 5, 2012, and Plaintiff requested a *de novo* hearing. (TR 58-89, 100-02.) On August 20, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Dawn M. Gruenburg. (TR 35-54.) In a September 5, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 19-30.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## II.      HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 6-12), Defendant (docket no. 15 at 4-13), and the ALJ (TR 23-28, 29) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 17, 2012, and that Plaintiff suffered from the following severe impairments:  degenerative disc disease of the cervical spine, spinal cord issues due to central

cord syndrome, and status-post closed head injury. (TR 21-22.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 22-23.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he should have the sit and stand option. He can occasionally lift with the upper extremities, frequently climb stairs, and never climb ropes. He can frequently balance, and occasionally stoop, kneel, crouch, or crawl. He is limited to lifting with his arms to shoulder height and frequent use of his hands for fingering and handling. He must avoid even moderate exposure to vibration and all exposure to hazards at the work site. He can perform simple work tasks on a sustained basis.

(TR 23-28.) Subsequently, in reliance on the vocational expert's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 29.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 17, 2012, through the date of the decision. (TR 19, 29-30.)

## IV.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on

"the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ made an improper Step Three Determination, and it is not supported by substantial evidence; and (2) the ALJ's RFC assessment is internally inconsistent and is not supported by substantial evidence. (Docket no. 14 at 13.)

*1. The ALJ's Step-Three Determination*

In his first argument, Plaintiff challenges the ALJ's determination at step three of the sequential evaluation process that Plaintiff's impairments do not meet or medically equal Listing 1.04. (Docket no. 14 at 14-19.) At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Under Listing 1.04, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

Here, the ALJ stated that she evaluated the signs, symptoms, and laboratory findings of Plaintiff's severe impairments and found that they did not meet or medically equal in severity or duration the criteria of Listings 1.04, 11.02, 11.14, 12.02, or any other Listing. (TR 22.) With regard to Listing 1.04, the ALJ explained:

> In making this determination, the undersigned considered the claimant's impairments in view of Medical Listing 1.04 (Disorders of the spine). The medical evidence does not satisfy the criteria of Listing 1.04. Specifically, the record is devoid of evidence of herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture. There is no confirmation by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, which is manifested by severe burning or painful dysesthesias, and resulting in the need for changes in position or posture more than once every two hours.

(TR 22.)

Plaintiff argues that the ALJ failed to properly analyze or explain why Plaintiff's impairments do not meet or medically equal Listing 1.04A. (Docket no. 14 at 14-19.) Plaintiff expounds that "the ALJ's Step 3 determination is bereft of an actual discussion beyond that of a simple regurgitation of the Listing language, and fails to specifically identify the reasons for

7

determining that Plaintiff fails to meet Listing 1.04(A)." (*Id*. at 16.)  Plaintiff also argues that the ALJ's statement that "the record is devoid of evidence of . . . spinal stenosis, osteoarthritis, [or] degenerative disc disease" is blatantly inaccurate and internally inconsistent with her step-two finding that Plaintiff has a severe impairment of degenerative disc disease. (*Id*. at 17; docket no. 16 at 4.)  Defendant counters that Plaintiff's arguments are unavailing because he has failed to meet his burden at step three of demonstrating that his impairment meets all of the criteria of Listing 1.04A.  (Docket no. 15 at 16-21.)

Plaintiff is correct; the ALJ's statement in her step-three analysis of Listing 1.04 that "the record is devoid of evidence of . . . degenerative disc disease" is, indeed, internally inconsistent with her step-two finding that Plaintiff has a severe impairment of degenerative disc disease. Moreover, both parties seemingly agree that the ALJ did not address Listing 1.04A in her step-three analysis; as Defendant points out, in addressing Listing 1.04, the ALJ focused on subsection B of the Listing. (*See* docket no. 15 at 17.)  Had the ALJ stopped there, the undersigned would recommend a sentence-four remand for a proper discussion of whether Plaintiff's impairments meet or medically equal Listing 1.04A.

Nevertheless, later in her decision, the ALJ discussed Plaintiff's spinal impairments in specific enough terms to make it clear that Plaintiff did not meet the criteria of Listing 1.04A, specifically, that of motor loss.  The ALJ acknowledged that Plaintiff has established degenerative findings in the cervical spine and sensitivity of his hands, but she noted that the record indicated only "small, partial, or mild" degenerative changes.  (TR 26 (citing TR 378).) The ALJ also pointed out the conclusion of the consultative examiner, Dr. Siva Sankaran, M.D., that despite his neck injury, surgical intervention, and residual sensory loss in his arms and hands, Plaintiff exhibited no upper extremity motor weakness and only mild limitation of motion

8

of the cervical spine. (TR 25-26 (citing TR 335).) The ALJ also discussed Plaintiff's neurosurgeon's June 2013 observation that Plaintiff exhibited good strength in his extremities, biceps, and triceps, and that his reflexes were within normal range. (TR 26 (citing TR 406).)

The ALJ's discussion of the evidence pertaining to Plaintiff's spinal impairments, albeit at a later step of the sequential evaluation process, clarifies the ALJ's finding that Plaintiff does not meet the criteria of Listing 1.04A. While Plaintiff may be able to point to evidence to suggest otherwise, it is not the Court's role to reweigh or resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). The ALJ's discussion is not so deficient as to preclude meaningful review and is supported by substantial evidence in the record. Accordingly, Plaintiff's Motion regarding the ALJ's step-three determination will be denied.

   2.   *The ALJ's Assessment of Plaintiff's RFC*

Next, Plaintiff argues that the ALJ's RFC assessment is internally inconsistent and is not supported by substantial evidence because the ALJ erred in her evaluation of the opinion of Ms. Laura Surrock, PAC, Plaintiff's treating physician assistant. (Docket no. 14 at 19-21.) Ms. Surrock, of Janes Street Academic Community Health, began treating Plaintiff on February 13, 2012. (TR 410.) On July 14, 2013, Ms. Surrock completed a Physical Residual Functional Capacity Questionnaire concerning Plaintiff's impairments, in which she opined, in relevant part, that Plaintiff could sit for about 2-4 hours and stand or walk for about 2-4 hours in an eight-hour workday; would need a job that permits shifting positions at will from sitting, standing, or walking; would often need to take unscheduled breaks during the workday; could rarely lift less than ten pounds; could never look down, look up, or turn his head to the right or left; could never stoop or bend or climb ladders; could rarely twist, crouch or squat, or climb stairs; and had significant limitations with reaching, handling, or fingering. (TR 410-13.)

9

Physicians' assistants are not "acceptable medical sources" under the Regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Opinions from sources that are not considered "acceptable medical sources" are important and should be evaluated when assessing the severity of an individual's impairments and the impact those impairments have on the individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2, *3 (Aug. 9, 2006). Nevertheless, the ALJ is not required to accord the opinion any special weight or consideration. *Taylor v. Comm'r of Soc. Sec.*, No. 1:11-cv-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)). Social Security Ruling 06–03p states that there are certain factors an ALJ may weigh when reviewing opinions from non-acceptable medical sources, such as the nature and extent of the relationship between the source and the individual, how well the source explains the opinion, the source's specialty or area of expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion. 2006 WL 2329939, at *4-5.

The ALJ assessed Ms. Surrock's opinion as follows:

> The undersigned gave great weight to the Physical Residual Functional Capacity Assessment from Lauren Surrock, PAC, dated July 14, 2013 to the extent that the claimant was limited to a reduced range of sedentary exertion work. Although not an "acceptable medical source", her opinion was well reasoned, well documented, and was consistent with the preponderance of the record especially the findings of Malcom Field, M.D. a neurosurgical specialist in June of 2013 (Ex. 16F; 17F).

(TR 27-28.)

Plaintiff challenges the ALJ's assessment of great weight to Ms. Surrock's opinion "to the extent that [Plaintiff] was limited to a reduced range of sedentary exertion work." (Docket no. 14 at 19-21; docket no. 16 at 5-6.) Plaintiff argues that the ALJ erred because Ms. Surrock does not expressly limit Plaintiff to a "reduced range of sedentary work" and because the

10

limitations assessed by Ms. Surrock – namely, that Plaintiff could sit for about 2-4 hours and stand or walk for about 2-4 hours in an eight-hour workday – do not necessarily amount to full-time employment capability, let alone the capability to perform sedentary work. (*Id.*) Plaintiff's argument here misses the mark. To the extent that the limitations assessed by Ms. Surrock indicate that Plaintiff is unable to perform a reduced range of sedentary work, those limitations were not accorded great weight by the ALJ. Notably, the ALJ did not adopt the portion of Ms. Surrock's opinion regarding Plaintiff's ability to sit, stand, or walk; rather, the ALJ found that Plaintiff could sit, stand, and walk as required to perform sedentary work except that he would need a job that offered a sit/stand option. The Court will deny Plaintiff's Motion with regard to this issue.

Plaintiff also argues that the ALJ needed to provide an adequate explanation for failing to adopt the limitations set forth by Ms. Surrock in her assessment of Plaintiff's physical RFC. (Docket no. 14 at 20; docket no. 16 at 6.) But "SSR 06-3p is phrased in permissive rather than mandatory terms," particularly with regard to weighing the suggested factors. *Bernard v. Comm'r of Soc. Sec.*, No. 11-12951, 2012 WL 3639054, at *12 (E.D. Mich. July 25, 2012) (citations omitted), *report and recommendation adopted*, 2012 WL 3646937 (E.D. Mich. Aug. 23, 2012); *see* SSR 06-03p, 2006 WL 2329939, at *4-5. Accordingly, the ALJ is under no obligation to explain the weight given to a physicians' assistant's opinion or give good reasons for why the opinion was discounted. *See Southward v. Comm'r of Soc. Sec.*, No. 11-CV-14208, 2012 WL 3887439, at *10 (E.D. Mich. May 17, 2012). Similarly, the ALJ is not required to explain why she did not adopt the limitations assessed by Ms. Surrock. Plaintiff's Motion with regard to Ms. Surrock fails.

11

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **DENIED**, and Defendant's Motion for Summary Judgment [15] is **GRANTED**.


Dated: March 21, 2016            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: March 21, 2016            s/ Lisa C. Bartlett
                                 Case Manager